**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**MICHAEL GIORGIO***; and*
**KIRTI NAIK***,*

                              Plaintiffs,

        *~ versus ~*

**SMC BLOCKCHAIN LABS, LLC***,*
**SAIFUL KHANDAKER***,*
**RABIUL KARIM***,*
**SMC LABS, SMC LABS BD, LTD***,*
**TOI LABS, LLC***,*
**TOI CHAIN***, and*
**REVOFAST VENTURE LLC***,*

                              Defendants.

Case No.  **1:26-cv-00475**

**District Judge** Honorable **:** Lewis Jeffrey Liman

**Magistrate Judge** Robert W. Lehrburger

---

**MEMORANDUM OF LAW by**
**SAIFUL KHANDAKER** *and* **RABIUL KARIM**
*in support of*
**MOTION TO DISMISS** *and to*
**STAY DISCOVERY PENDING RESOLUTION**
**OF THIS MOTION**

---

Respectfully Submitted March 9, 2026
Baruch S. Gottesman, Esq.
*Counsel for Defendants*
*Saiful Khandaker and Rabiul Karim*

1

I.    **Table of Contents**

I.    Table of Contents ...............................................................................................2

II.    Table of Authorities ..........................................................................................4

III.    Introductory Statement......................................................................................6

IV.    Factual and Procedural Background ..................................................................7

V.    Argument .........................................................................................................11

    A.    Legal Context for this Motion to Dismiss.................................................11

        1.    Standard for Dismissal under
            FED R. CIV P. 12(b)(1), (3) and (6)
            and the "particularity" Requirement
            for the Fraudulent Inducement Claims ..........................................11

    B.    This Court has no Personal Jurisdiction
       Over the Moving Defendants .....................................................................17

        1.    There is no General Jurisdiction
            Over the Pennsylvania-Domiciled
            Moving Defendants ..........................................................................12

        2.    There is no Specific Jurisdiction
            Arising from Alleged
            Breach of Contract and other Torts
            Committed in Pennsylvania ...........................................................13

    C.    The First Amended Complaint Fails
       to State a Claim Upon Which Relief
       Can be Granted ...........................................................................................15

        1.    The Criminally Usurious
            Promissory Note is not Enforceable .............................................15

        2.    No Claim is Stated Under
            New York Labor Law
            for Executive Services
            Provided in Pennsylvania ...............................................................17

        3.    The Moving Defendants are
            not Liable for the Severance Payment ..........................................18

4.      The Fraud Claims
        are Not Alleged with Specificity ....................................................20

D.      Discovery Should be Stayed
        Pending the Resolution of this Motion ......................................................22

VI.     Conclusion ...........................................................................................24

II.    **TABLE OF AUTHORITIES**

**i.    Cases**

Adar Bays v. Genesys ID, Inc.,
   37 N.Y.3d 320 (2021) ...............................................................................17

Alves v. Affiliated Care of Putnam, Inc.,
   2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022) ..........................................20

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) .................................................................................12

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
   305 F.3d 120 (2d Cir. 2002) .....................................................................11

Battistta v. Flexi USA Inc.,
   2014 WL 12828973 (E.D.N.Y. June 30, 2014) .........................................14

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) .................................................................................12

Brooks v. Macy's, Inc.,
   2010 WL 5297756 (S.D.N.Y. Dec. 21, 2010) ..........................................23

Cicero v. Intellor Grp., Inc.,
   2021 WL 1720810 (W.D.N.Y. Apr. 30, 2021) ..........................................20

Cortec Indus., Inc. v. Sum Holding L.P.,
   949 F.2d 42 (2d Cir. 1991) .........................................................................8

Cottman Transmission Sys. v. Martino,
   36 F.3d 291 (3d Cir. 1994) .......................................................................11

Creative Photographers, Inc. v. Grupo Televisa, S.A.B.,
   763 F. Supp. 3d 618 (S.D.N.Y. 2025)......................................................... 9

Diamond v. Shiftpixy, Inc.,
   2021 WL 3085405 (S.D.N.Y. July 19, 2021) ......................................11, 14

Gomez v. Petpivot, Inc.,
   Case No. 25-cv-5622-LJL (S.D.N.Y. Feb. 24, 2026) ...............................12

Gray v. Wesco Aircraft Holdings, Inc.,
   454 F. Supp. 3d 366 (S.D.N.Y. 2020)......................................................... 8

Greenwich Retail Group, LLC v. Moby Capital,
    Adv. Proc. No. 25-01106 (S.D.N.Y. Feb. 20, 2026) ..............................................16–17

Gulf Ins. Co. v. Glasbrenner,
    417 F.3d 353 (2d Cir. 2005) ......................................................................................11

Hammond v. Marrano,
    451 N.Y.S.2d 484 (4th Dep't 1982) ..........................................................................16

Jenkins Brick Co. v. Bremer,
    321 F.3d 1366 (11th Cir. 2003) .................................................................................11

Licci v. Lebanese Canadian Bank,
    732 F.3d 161 (2d Cir. 2013) ......................................................................................11

McDermid, Inc. v. Deiter,
    702 F.3d 725 (2d Cir. 2012) ........................................................................................9

McSweeney v. Cohen,
    Case No. 24-cv-1503-LJL (S.D.N.Y. Sept. 5, 2024) .............................................22–23

Nicosia v. Amazon.com, Inc.,
    834 F.3d 220 (2d Cir. 2016) ........................................................................................8

Olberding v. Illinois Cent. R.R.,
    346 U.S. 338 (1953) ...................................................................................................11

Sikhs for Justice v. Nath,
    893 F. Supp. 2d 598 (S.D.N.Y. 2012) .......................................................................14

Stanley Weisz, P.C. Retirement Plan v. NCHD Associates,
    655 N.Y.S.2d 381 (2d Dep't 1997) ...........................................................................16

United States v. Baisucci,
    786 F.2d 504 (2d Cir. 1986) ......................................................................................16

Wing v. E. River Chinese Restaurant,
    884 F. Supp. 663 (E.D.N.Y. 1995) ............................................................................20

### III.   INTRODUCTORY STATEMENT

The Plaintiffs' First Amended Complaint seeks the wrong claims against the wrong parties in the wrong Court.  For those reasons and as argued here, the Moving Defendants Saiful Khandaker and Rabiul Karim respectfully submit that the Complaint must be dismissed with prejudice.  Further, in light of the fatal flaws in the claims brought here, the Moving Defendants submit that Discovery should be Stayed pending the resolution of the underlying Motion to Dismiss.  It would be unfair to impose Discovery on a party over which this Court clearly has no personal jurisdiction in support of a pleading that lays out no Cause of Action.

The First Amended Complaint is brought against the <u>wrong parties</u>.  Any grievance arising from the Plaintiffs' prior relationship with various corporate entities cannot impose personal liability on the Moving Defendants.  The Moving Defendants' former role as shareholders in a public company cannot impose personal liability on them for any alleged failure to pay wages.  Nor did the Plaintiffs comply with the conditions precedent to file suit against the Moving Defendants, which include timely Notice and a final judgment against the company.

The First Amended Complaint is for the <u>wrong claims</u>.  The claims arising under New York Labor Law are a non-starter as the Plaintiffs are not "Employees" under the applicable law, and the law at issue does not apply to the executive services that the Plaintiffs supplied in Pennsylvania.  Further, the fraudulent inducement claims fail to state with specificity any cause of action.

The First Amended Complaint is brought in the <u>wrong Court</u>.  The Moving Defendants are resident in Pennsylvania.  The alleged employment relationship was entered into between the Plaintiffs and an out-of-state corporate entity to provide executive services in Pennsylvania.  There is no basis for general or specific jurisdiction over the Moving Defendants.

For these reasons and as explained more fully below, the Moving Defendants respectfully move to Dismiss the First Amended Complaint and to Stay Discovery pending the resolution of this Motion.

## IV.    FACTUAL AND PROCEDURAL BACKGROUND

The First Amended Complaint ("FAC", available at ECF 7) alleges that the Plaintiffs Giorgio and Naik were uncommonly sophisticated business professionals. The Plaintiffs achieved numerous academic degrees, including Masters degrees from two of the top business schools in the United States.  Naik, a Columbia Business School alum and Giorgio, who holds a MBA from Quinnipiac University, share a half-century of sophisticated business experience, FAC ¶¶ 9-15.

Plaintiffs allege that they served as officers of "SMC" – the Chief Executive Officer in Giorgio's case, and Chief Marketing Officer for Naik – for a term of two years that ended in the Spring of 2025, FAC, *Id.*

The First Amended Complaint alleges that "SMC" was a start-up project located at headquarters in Chester and later Montgomery County in suburban Pennsylvania, FAC ¶¶ 16-23. The First Amended Complaint alleges that SMC was involved in cutting-edge, blockchain technology, including plans to practice patents created for Active Content Addressable Networking (ACAN) and Statistical Multiplexed Computing (SMC) to utilize blockchain technology to improve the efficiency of financial transactions, especially in emerging markets, FAC ¶ 21.  This was a high-risk, high-return project for which the Plaintiffs (both highly sophisticated business professionals) chose to engage.

The First Amended Complaint is not clear about which legal entity employed the Plaintiffs.   The First Amended Complaint speckles a flurry of inconsistent and baseless

conclusions of law about the connections and co-liability between a half-dozen different legal entities named in the First Amended Complaint.  What is undisputed is that <u>all</u> of the relevant companies were organized outside of New York and were operated exclusively in Pennsylvania.

As the full record shows and as seen in the Offer Letter, annexed as Exhibit A to the accompanying Affidavit in Support and appropriately considered on this Motion to Dismiss, [1] the initial Offer Letter was executed by and between Fintech Ecosystem Development Corp. and Mr. Naik.  That is to say, this was a relationship between a SPAC, FAC ¶ 46, and the Plaintiffs. See also Exhibit B to the Affidavit in Support showing a similar offer letter with Plaintiff Giorgio.

The Plaintiffs themselves were always clear that their role was with Fintech Ecosystem Development, Corp., as shown in the e-mail footer below:



Illustration 1 – Exemplar of Plaintiff's e-mail as of October 2023, See Aff. in Support

---

[1]     As this Honorable Court has held:

> "a complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference,' and that a court may consider documents incorporated in a complaint by reference on a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) without converting it into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56."

*Gray v. Wesco Aircraft Holdings, Inc.*, 454 F.Supp. 3d 366, 382-83 (S.D.N.Y. 2020) *quoting Cortec Indus., Inv. v. Sum Holdings,* 949 F.2d 42, 47 (2d Cir. 1991).  This Court has also noted that the record can also include "[S]tatements or documents incorporated in [the complaint] by reference" *Gray*, *Id.*, *quoting Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016)(emendments in original).

Given the artifice on this Motion to Dismiss that the Court must accept the plausible allegations in the First Amended Complaint as true (at least as it relates to dismissal for failure to state a claim)[2] the Plaintiffs entered to Employment Agreements with "SMC", but as shown, as late as October 2023, the Plaintiffs described themselves as working for Fintech Ecosystem Development, Corp., a NASDAQ-listed company.  And Fintech was the counterparty to the respective employment agreements.

The First Amended Complaint alleges that Defendants "stopped paying Giorgio entirely" in December 2023, and that Girogio agreed to stop accruing salary payments as of January 2024, FAC ¶ 132.  The First Amended Complaint also alleges that the Defendants failed to "pay any portion of the Plaintiffs' salaries after October 2023" but that the Plaintiffs agreed to continue their executive roles with "SMC".  Plaintiffs also admit that in September 2023, each of the Plaintiffs entered into a criminally usurious and entirely unenforceable Promissory Note, the purposes of which was to "pay employee compensation", FAC ¶ 161-176.

The First Amended Complaint alleges that eighteen (18) months after the parties agreed to amend their relationship, and more than one hundred and eighty (180) days after the services as a paid employee under the Agreements with "SMC" ended, the Plaintiffs sent some documents to Mr. Karim, FAC ¶ 246.

On that basis, the Plaintiffs now allege against the Moving Defendants personally the following five causes of action:

(i.)     A cause of action to enforce the criminally usurious Promissory Note against the Moving Defendants personally, FAC ¶¶ 235-48;

---

[2]     With respect to that prong of the Motion that seeks dismissal on the basis of a lack of personal jurisdiction, Affidavits are admissible, *See, e.g.*, *Creative Photographers v. Grupo Televisia, SAB*, 763 F.Supp. 3d 618, 629 (S.D.N.Y. 2025) *quoting McDermid, Inc. v. Deiter*, 702 F.3d 725, 727-28 (2d Cir. 2012)("The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.")

(ii.)   A cause of action for unpaid wages under the New York Labor Law for the Plaintiffs' executive services provided in Pennsylvania pursuant to a contractor agreement; with a claim of personal liability against the Moving Defendants despite there being no unsatisfied judgment against any corporation, the "Notice" being served more than one hundred and eighty (180) days after the termination of the services, and the alleged "employer" being a public-listed company, FAC ¶¶ 249-262;

(iii.)  A cause of action for a severance payment; with a claim of personal liability against the Moving Defendants on the same basis as alleged in the Second Cause of Action, FAC ¶¶ 263-280;

(iv.)   Fraudulent Inducement, FAC ¶¶ 281-295; and

(v.)    Failure to provide accurate wage statements, again with a claim of personal liability by the Moving Defendants, FAC ¶¶ 296-305.

The Moving Defendants, Saiful Khandaker and Rabiul Karim, now move to dismiss the Complaint.  Additionally, the Moving Defendants respectfully submit that given that there is plainly no case for them to answer and no personal jurisdiction over them in this Court, Discovery should be Stayed pending the resolution of this Motion to Dismiss.

*[Remainder of Page Intentionally Left Blank]*

**V.    ARGUMENT:**

**A.    Legal Context for this Motion to Dismiss**

    **1.    Standard for Dismissal under
Fed R. Civ P. 12 (b)(1) and (7)
and the "Particularity" Requirement
for the Fraudulent Inducement Claim**

This Court has confirmed that:

> "To determine whether the exercise of personal jurisdiction is proper in a diversity case, the Court must conduct a two-part inquiry: first, the Court looks at whether there is a basis for personal jurisdiction under the laws of the forum state, and second, the Court must examine whether the exercise of personal jurisdiction comports with constitutional due process."

*Diamond v. Shiftpixy, Inc.*, Case No. 20-cv-7305-LJL, 2021 WL 3085405 (S.D.N.Y. July 19, 2021) citing *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

For purposes of venue, the Courts look at the statute that provides:

> "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355-356 (2d Cir. 2005).

*Gulf* emphasized that "we caution district courts to take seriously the adjective 'substantial.' We are required to construe the venue statute strictly . . . It would be error, for instance, to treat the statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." *Gulf Inc.*, 417 F.3d at 357, *citing Olberding v. Illinois*

*Cent. R.R.*, 346 U.S. 338, 340 (1953); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003); *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir.1994).  In other words, even if the Court were to find that there is some technical basis to establish personal jurisdiction over the Moving Defendants, it should be dismissed for improper venue if it is determined that the facts and circumstances of this case arose in Pennsylvania.

"To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include 'sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.'" Gomez v. Petpivot, Inc., Case No. 25-cv-5622-LJL (Feb. 24, 2026) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Under Rule 9, claims of fraud must "state with particularity the circumstances constituting the fraud".

**B.    This Court has no Personal Jurisdiction Over the Moving Defendants**

**1.    There is no General Jurisdiction Over the Pennsylvania-Domiciled Moving Defendants**

Defendants Khandaker and Karim live in Pennsylvania.  That's where they allegedly operated the companies, that's where the Companies allegedly employed the Plaintiffs.

The First Amended Complaint makes no facial claim of general jurisdiction over the Moving (or any other) Defendant.  Nor is there any basis to allege that any Defendant is "at home" in New York.  The Moving Defendants respectfully reserve the right to challenge any supplemental claim of general jurisdiction in New York over any of the Defendants, should that be raised in the Plaintiffs' response to this Motion.

**2.      There is no Specific Jurisdiction
Arising from Alleged
Breach of Contract and Other Torts
Committed in Pennsylvania**

The factual bases to establish personal jurisdiction over the Moving Defendants are

the allegations that:

> "29.    Khandaker has had continuous and systematic contacts with the State of New York, employed Plaintiffs to work in New York, and made statements and took other actions to knowingly and intentionally harm Plaintiffs in New York.

> "30.    Throughout the relevant period, Khandaker also regularly conducted business in New York and throughout the United States and internationally, including by advertising, marketing and raising millions of dollars in capital from individual and corporate investors nationwide and internationally. In so doing, Khandaker relied on nationwide and international means of commerce, including internet, phone and interstate and international banking and travel."

FAC ¶ 29-30.  Identical conclusory allegations are made against Defendant Karim,

FAC § 35-36.

Under N.Y. C.P.L.R. § 302(a)(1), non-domicilaries over which this Court has no

general jurisdiction may be subject to personal jurisdiction only if a party:

> "1.    transacts any business within the state or contracts anywhere to supply goods or services in the state; or

> "2.    commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

> "3.    commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives

substantial revenue from interstate or international commerce; or owns, uses or possesses any real property situated within the state."

C.P.L.R. § 302(a)

The First Amended Complaint makes out no allegation that the Moving Defendants transacted any business in New York. All we have are vague allegations that "[Defendants] regularly conducted business in New York and throughout the United States and internationally, including by advertising, marketing and raising millions of dollars in capital from individuals and corporate investors nationwide and internationally." FAC ¶¶ 30, 36.

The only other allegation in the body of the Complaint is:

> "90.    Khandaker and Karim met with Plaintiffs in New York regarding their potential employment with SMC."

FAC ¶ 90.

Courts consistently hold that "multiple meetings", let alone a single meeting with each of the Plaintiffs (See Affidavit), is not sufficient to establish personal jurisdiction over a party, *See Diamond*, 2021 WL 3085405. See also, *Creative Photographers*, 763 F.Supp. 3d at 632 (allegation that Defendant "transacted business on numerous occasions with the New York headquartered entity Univision Communications," is a "conclusory statement [] insufficient to establish personal jurisdiction.") *quoting Sikhs for Just. v. Nath.*, 893 F.Supp. 3d 598, 623 (S.D.N.Y. 2012); and c*iting Battistta v. Flexi USA Inc.*, 2014 WL 12828973, at *3 & n. 1 (E.D.N.Y. June 30, 2014).

In fact as seen in the First Amended Complaint, all the tortious conduct against the Moving Defendants occurred *solely* in Pennsylvania. Plaintiffs relationship was with Pennsylvania companies, and the torts relate to employment relationships in Pennsylvania.

A holding that a single meeting in New York, or vague allegations that a party conducts business "nationwide and overseas," is sufficient to fabricate personal jurisdiction would open the doors of this Courthouse to literally any and every lawsuit in the United States. Finding personal jurisdiction over the Moving Defendants here would not comport with C.P.L.R. § 302 and does not comport with the basic concept of due process.

For these reasons, the Moving Defendants respectfully submit that the First Amended Complaint must be dismissed because of the lack of personal jurisdiction over the Moving Defendants. For these reasons, Venue is also improper in this Court, even if the Court were to find that the Court technically has personal jurisdiction over any of the Defendants.

**C.      The First Amended Complaint Fails to State a Claim Upon Which Relief Can be Granted**

**1.      The Criminally Usurious Promissory Note is not Enforceable**

The First Cause of Action alleges that Plaintiffs entered into Promissory Notes. Referenced in and relied on in the First Amended Complaint, those Notes themselves are admissible on this Motion to Dismiss. Copies are annexed as Exhibit C and D to the accompanying Affidavit. The theory in the First Amended Complaint is that the Moving Defendants are liable for the Promissory Notes under N.Y. LTD. LIAB. CO. LAW § 609(c), FAC § 245. We address the non-applicability of § 609(c) separately below in subsection 3 of this section.

The Promissory Notes are criminally usurious and not enforceable.

The Promissory Note with Giorgio provided:

"Section 2     Interest Rate Interest of $5000 guaranteed within the first 30 days. After 30 days a per diem of $166.67 will accrue. Following the maturity date, a newly agreed upon increased per diem will be increased to $250.

> Following the occurrence of an Event of Default, an additional interest charge of 10% per annum on the then outstanding indebtedness hereunder shall be immediately due and owing from the date of the Event of Default until Lender has received the Total Payback. All computations of interest shall be calculated on the basis of a year of 360 days for the actual days elapsed."

Giorgio Promissory Note at § 2

Given the $90,000.00 loan, a $5,000 payment within 30 days (which is $166.67 daily) and an additional $166.67 per diem work out to an annualized interest rate of 67.60% (0.185%/per day x 365 = **67.6% annually**).

Under New York law, usury is forbidden (*See* GEN. OBLGS. LAW § 5-501) when the annual rate on a loan is more than 16% per annum (*See* BANKING LAW § 14-a)(setting usurious rate of interest under § 5-501 at 16%). Usurious loans are null and void, *See, e.g.*, *Stanley Weisz, P.C. Retirement Plan v. NCHD Associates*, 655 N.Y.S. 2d 381 (2d Dept. 1997) (finding it proper to dismiss Complaint for collection of personal loan that required interest of 24% per annum).

Corporations have a higher rate of interest at which loans become null and void as usurious. Companies cannot interpose the defense of usury in any action unless there is a violation of PENAL LAW § 190.40 (GEN. OBLGS. LAW § 5-521). The Penal Law, in turn, finds a person guilty of criminal usury when they receive money as interest at a rate exceeding 25%/per annum, PENAL LAW § 190.40. If a loan requires repayment of more than 25% on an annualized basis it is usurious regardless of the lender's intent, *United States v. Baisucci*, 786 F.2d 504, 512 (2d Cir. 1986) *citing Hammond v. Marrano*, 451 N.Y.S.2d 484, 485 (4th Dept. 1982), and is unenforceable against both Corporate and Individual Defendants.

A recent decision by Bankruptcy Judge Wiles reviews the caselaw on whether a criminally usurious note can be enforced through the artifice of a "no usury" or waiver clause, *See*

*Greenwich Retail Group, LLC v. Moby Capital*, Case No. 25-cv-11295, Adv. Proc. No. 25-01106 (S.D.N.Y. Feb. 20, 2026)(collecting cases).  That review confirms the caselaw on that issue, which following the Court of Appeals of New York holds that, "loans proved to violate the criminal usury statute are subject to the same consequence as any other usurious loans: complete invalidity of the loan instrument." *Adar Bays v. Genesys ID, Inc.*, 37 N.Y.3d 320, 333 (2021)(answering Certified Question from Second Circuit and confirming that criminally usurious Notes by Corporations are *void ab initio*).  The supposed "No Usury" clause here is therefore a nullity.

The criminally usurious Promissory Notes are not enforceable and therefore the First Cause of Action must be dismissed with prejudice.

**2.    No Claim is Stated Under
New York Labor Law
for Executive Services
Provided in Pennsylvania**

New York Labor Law protects "Employees", which the statute defines as:

"any individual employed or permitted to work by an employer in any occupation, but shall not include any individual who is employed or permitted to work: . . . (b) in a bona fide executive, administrative, or professional capacity . . .".

N.Y. LABOR LAW § 651(5)

The First Amended Complaint and record conclusively establish that the Plaintiffs provided executive services and therefore New York Labor Law does not apply.

In addition, as shown above, the Plaintiffs worked for companies in Pennsylvania and reported to the Board of Directors and their "employers" in Pennsylvania.  The First Amended Complaint contains no allegations that the services were provided for in New York, and other than

the happenstance of the Plaintiffs' physical residence in the Empire State there is no basis to apply New York law to the claims raised here.

By analogy to N.Y. HUMAN RIGHTS LAW, the alleged "Impact" of the torts at issue arose out of the Plaintiffs' employment *in Pennsylvania*. No Defendant had an office in New York (see Affidavit) and the Plaintiffs were never paid to work in New York. Under the Plaintiffs' theory that New York Labor Law applies the Plaintiffs' job in Pennsylvania, any remote worker nationwide can set up their laptop at a café in Manhattan and on that basis claim the protections of the New York Labor Law. The location where an employee happens to work, does not create an "impact" in New York state where the employment relationship was in Pennsylvania and the alleged torts occurred out of state. The parties' relationship has no connection with New York.

The executive services provided by Plaintiffs in Pennsylvania do not trigger New York Labor Law and therefore the Second and Fifth Causes of Action that arise out of New York Labor Law must be dismissed with prejudice.

### 3.    The Moving Defendants are not Liable for the Severance Payment

The First Amended Complaint alleges that the Moving Defendants are liable for the severance payment under New York Ltd. Liab. Co. § 609(c). Other causes of action also seek to impose personal liability on the Moving Defendants on that basis. For the reasons explained below, no personal liability attached here. Therefore, the attempt to impose personal liability on the Moving Defendants for the severance payments must be dismissed with prejudice.

As an initial matter, it is unclear what notice was served on the Moving Defendants. The First Amended Complaint alleges that "Plaintiffs provided Khandaker and other Defendants with notice of liability under N.Y. Business Corp. Law § 630(a) on May 7, 2025, which is

substantially identical to notice of liability required under NY LLCL § 609, and which Defendants acknowledged on or around August 4, 2025." FAC ¶ 27.

Does this mean to say that the Notice of Liability substantially identical? Are the relevant statutes substantially identical? What corporation's (or LLC's) liability did the Notice address? The First Amended Complaint does not say and does not include a copy of the Notices.

Asking these questions about the ambiguity in FAC ¶ 27 is not an academic exercise. As shown above, the Offer Letter was with a foreign corporation, Fintech Ecosystem Development Corp. Not with "SMC", to the extent that term refers to any LLC.

Among other reasons why that distinction matters, is that Bus. Corp. Law § 630(a) explicitly provides that shareholder liability can only attach to owners of a "domestic corporation or of any foreign corporation, when the unpaid services were performed in the state, no shares of which are listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national or an affiliated securities association".

As alleged in the First Amended Complaint, Fintech was traded as a SPAC. One can also see that in the footer of the Plaintiffs' e-mails, illustrated above. § 630 does not apply.

Further, § 630 applies when the "unpaid services were performed in this state". As discussed earlier, the happenstance of a remote worker setting up their laptop at a local café does not automatically grant that employee the full and unusual protections of New York's Labor laws. The services at issue in this case were performed in Pennsylvania. The Plaintiffs reported to the Board and their employees in Chester and Montgomery Counties. New York's unique rules and laws that govern the personal liability of shareholders do not apply in this case.

Further, the statute provides that the notice "shall be given within one hundred and eighty days after termination of such services" BUS. CORP. LAW § 630. As alleged in First Amended Complaint itself, the parties agreed to terminate the Plaintiffs' relationship in late 2023.

The parties agreed then that the Plaintiffs would not be paid for any work provided.  The "Notice" was not serviced until more than 18 months after the termination and therefore the claim under § 630(a) must be dismissed with prejudice.

Last, any claim for personal liability premised on BUS. CORP. LAW § 630 can only be brought after a judgment has been entered against the Corporation and the judgment has been unenforced against the relevant corporation. *See*, *e.g.*, *Alves v. Affiliated Care of Putnam, Inc.*, Case No. 16-cv-1593-KMK, 2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022) *citing Cicero v. Intellor Grp., Inc.,* No. 18-CV-6934, 2021 WL 1720810, at *6 (W.D.N.Y. Apr. 30, 2021); *Wing v. E. River Chinese Rest.,* 884 F. Supp. 663, 668 (E.D.N.Y. 1995).  With no Judgment entered, any claim for personal liability by the Moving Defendants arising under § 630(a) is premature.

For these reasons, the Third Cause of Action against the Moving Defendants that seeks to impose personal liability on the Plaintiffs for the severance payments (as well as all claims that arise out of BUS. CORP. LAW § 630(a)) must be dismissed with prejudice.

### 4. The Fraud Claims are Not Alleged with Specificity

The First Amended Complaint makes no plausible allegations of fraud by the Moving Defendants, let alone with the specificity required under Rule 9.

As alleged in the First Amended Complaint, each of the Plaintiffs holds an MBA by a nationally-recognized University.  They each had about a quarter-Century of experience in the business world.  The First Amended Complaint alleges that Defendants served as the Chief Executive Officer and the Chief Marketing Officer, respectively, of "SMC".

That context is important when considering the plausibility of the allegations and how the Moving Defendants supposedly induced the Plaintiffs to engage in certain activities.

Plaintiffs were sophisticated business professionals who served as CEO and CMO of the company! Any claim that depicts them as simple dupes who were sweet-talked into investing cash and sweat equity *into the company over which they served as the CEO* is facially absurd.

The Fourth Cause of Action summarizes how fraudulent inducement by SMC caused the Plaintiffs to:

    a.       Leave their prior jobs and/or forego other job opportunities

    b.       agree to work for SMC and to continue working even while their salaries are not paid in full; *and*

    c.       loan substantial amounts of money to SMC pursuant to promissory notes.

None of these claims are plausible. None are alleged with sufficient specificity.

The First Amended Complaint alleges that Khandaker "assur[ed] Giorgio that the funding was guaranteed and urg[ed] him to start working for SMC in March 2023 rather than waiting", FAC ¶ 101. However, that's contradicted in the next paragraph where it is made clear that "Khandaker confirm[ed] that SMC had at least $2 million in funding 'in hand' to support initial salaries and costs." ¶ 102. In other words, a business professional with a quarter-century of experience understands a business promoter casually and orally referring to a potential investment as "guaranteed" does not preempt the dollars-and-cents reality, the written contract, and the information they can access as the C.E.O. of the company.

Further, the First Amended Complaint does not even allege that the two million dollar investment statement was untrue. Rather, it artfully claims: "SMC either never received the $2 million *in its own account*, or Khandaker received the funds but then diverted them to a non-SMC account under his control." FAC ¶ 103(emphasis added) In fact, as CEO the Plaintiffs know exactly where the funds went: to the company for which the Plaintiffs served as Executives.

In addition, the Plaintiffs admits that:

> "Prior to agreeing to work for SMC, Plaintiffs researched FEDC and the successful offshore companies Khandaker claimed to be associated with, and they spoke with reputable individuals in the fintech industry, including those introduced to them by Khandaker. They also confirmed Khandaker's ability to continually list FEDC as a registered NASDAQ company for over two years, which required him to raise over $100 million in initial commitments while making monthly investments of approximately $110,000 per month."

FAC ¶ 110.

In other words, the First Amended Complaint itself claims that the Plaintiffs *did not rely* on the alleged misrepresentations by the Defendants. By their own account, the Plaintiffs conducted their own in-depth research before entering into the relationships. That was true when they were hired. And it is certainly true after the Plaintiff was installed as Chief Executive Officer and Chief Marketing Officer of the project.

Simply put, the First Amended Complaint on itself admits there was no reliance on the allegedly false misrepresentations and therefore the First Amended Complaint must be dismissed with prejudice. In addition, as discussed before, there is no basis under BUS. CORP. LAW § 630(a) to impose personal liability on the Moving Defendants for alleged wrongdoing by the corporation.

### D.    Discovery Should be Stayed Pending the Resolution of this Motion

This Court has explained that on a Motion to Stay Discovery pending a decision on a Motion to Dismiss, "the burden is on the Defendants". *McSweeney v. Cohen*, Case No. 24-cv-1503-LJL (S.D.N.Y. Sept. 5, 2024)(collecting cases).

"A stay must be justified based on (1) the breadth of discovery sought and the burden of responding to it; (2) the prejudice, if any, to the opposing party of an order granting a

stay; and (3) the strength of the motion." *McSweeney*, *citing Brooks v. Macy's, Inc.*, 2010 WL 5297756, at *2 (S.D.N.Y. Dec. 21, 2010).

Respectfully, this is not a case with "strong arguments on both sides", <u>*McSweeny*</u>. It is plain that there is no personal jurisdiction over any Defendant, let alone the Moving Defendants.  It is clear that the claims that allege personal liability are all premised on a flawed premise that BUS. CORP. LAW § 630(a) applies.  For these and the other reasons described above, it would be profoundly unfair to impose on the Moving Defendants – the only Defendants who have appeared – the fully burden of Discovery in an out-of-state case where dismissal seems appropriate.

For these reasons, the Moving Defendants respectfully submit that Discovery should be Stayed pending the resolution of this Motion to Dismiss.

*[Remainder of Page Intentionally Left Blank]*

## VI.    CONCLUSION

For the reasons argued above, the Plaintiff respectfully seeks an order that will dismiss the First Amended Complaint with prejudice and Stay Discovery pending the resolution of this Motion.

DATED:        **March 10, 2026**

RESPECTFULLY SUBMITTED,

By:

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
bg@gottesmanlegal.com
*Attorney for Moving Defendant*

*Served via NYSCEF on all appearing parties*