IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL GIORGIO and KIRTI NAIK,<br><br>              Plaintiffs,<br><br>      v.<br><br>SMC BLOCKCHAIN LABS, LLC, SAIFUL KHANDAKER, RABIUL KARIM, SMC LABS, SMC LABS BD, LTD, TOI LABS, LLC, TOI CHAIN, and REVOFAST VENTURE LLC,<br><br>              Defendants. | Case No.: 26-cv-00475 (LJL) |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS KHANDAKER'S AND KARIM'S  MOTION TO DISMISS
AND TO STAY DISCOVERY PENDING RESOLUTION OF THEIR MOTION**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................... 1

ARGUMENT .............................................................................................................. 3

    I.     The Court Has Personal Jurisdiction Over Khandaker and Karim ........................ 3

          a.     Legal Standards for Motion to Dismiss on Personal Jurisdiction Grounds ...................................................................................... 4

          b.     Legal Standard for Personal Jurisdiction Over Alter Egos ........................ 6

          c.     Corporate Defendants' Contacts with New York Can Be Imputed to Individual Defendants Because the FAC Pleads They Were Shell Corporations ...................................................................................... 7

          d.     Factual Substantiation of Defendants' Contacts with and Injury to New York ...................................................................................... 8

          e.     The FAC Allegations Sufficiently Plead Jurisdiction Over Defendants ...................................................................................... 11

    II.     Venue is Appropriate in This District ................................................................ 15

    III.     The FAC States a Claim Upon Which Relief Can Be Granted as to All Claims ................................................................................................ 16

          a.     The FAC States a Claim for Breach of Contract in Connection with the Promissory Notes ...................................................................................... 17

          b.     Defendant Khandaker "Employed" Plaintiffs to Work in New York for Purposes of the N.Y.L.L. ...................................................................................... 20

          c.     Individual Defendants are Liable for the Good Reason Payment ............. 21

          d.     Plaintiffs Allege Fraudulent Inducement with Sufficient Specificity ....... 23

    IV.     The Case Should Not Be Stayed While This Motion Is Pending ........................ 24

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*A. I. Trade Fin. v. Petra Bank*,
989 F.2d 76 (2d Cir. 1993)............................................................................................ 5, 6

*Abramovitz v. Kew Realty Equities, Inc.*,
180 A.D.2d 568 (1st Dep't 1992) ..................................................................................... 17

*Ammirato v. Duraclean Int'l., Inc.*,
687 F. Supp. 2d 210 (E.D.N.Y. 2010) ............................................................................ 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................... 4

*In re BH Sutton Mezz LLC*,
No. 16 Civ. 10455, 2016 WL 8352445 (S.D.N.Y. Bankr. Dec. 1, 2016)......................... 20

*Cacchillo v. Insmed Inc.*,
833 F. Supp. 2d 218 (N.D.N.Y 2011)........................................................................... 5, 15

*Caiola v. Citibank, N.A., New York*,
295 F.3d 312 (2d Cir. 2002)............................................................................................. 25

*Cardell Fin. Corp. v. Suchodolski Assocs.*,
No. 09 Civ. 6148, 2012 WL 12932049 (S.D.N.Y. July 17, 2012) ..................................... 7

*Carlone v. Lion & The Bull Films, Inc.*,
861 F. Supp. 2d 312 (S.D.N.Y. 2012).............................................................................. 20

*Century Pac., Inc. v. Hilton Hotels Corp.*,
No. 03 Civ. 8258, 2004 WL 868211 (S.D.N.Y. Apr. 21, 2004)................................. 18, 18

*Cesfin Ventures LLC v. Al Ghaith Holding Co. PJSC*, No. 21 Civ. 1395,
2022 WL 1885906 (S.D.N.Y. Dec. 10, 2022) ................................................................... 7

*Collison v. WANDRD, LLC*,
737 F. Supp. 3d 231 (S.D.N.Y. 2024).............................................................................. 21

*Cortlandt St. Recovery Corp. v Bonderman*,
31 N.Y.3d 30 (N.Y. 2018) .............................................................................................. 16

*Curry v. Huntington Copper, LLC*,
No. 12 Civ. 1673, 2013 WL 6816424 (N.D.N.Y Dec. 24, 2013)..................................... 13

*D. Klein & Son, Inc. v. Good Decision, Inc.*,
    147 F. App'x 195 (2d Cir. 2005) ........................................................................ 6

*D'Anzieri v. Harrison Global LLC*, No. 21 Civ. 8506,
    2022 WL 17404254 (S.D.N.Y. Dec. 2, 2022) ................................................... 15

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*,
    71 N.Y.3d 65 (N.Y. 2006) ............................................................................... 12

*Eaton & Van Winkle LLP v. Midway Oil Holdings Ltd.*,
    Index No. 102759/09, 2010 NY Slip Op 3054 .................................................. 14

*Fermin v. Las Delicias Peruanas Rest., Inc.*,
    93 F. Supp. 3d 19 (E.D.N.Y. 2015) .................................................................. 21

*Fischbarg v. Doucet*,
    9 N.Y.3d 375 (N.Y. 2007) ............................................................................... 14

*Geffner v. Quanta Servs., Inc.*,
    No. 18 Civ. 3761, 2018 WL 6807388 (S.D.N.Y. Dec. 27, 2018).................................... 15

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005)............................................................................. 16

*Humitech Dev. Corp. v. Comu*,
    847 N.Y.S.2d 896 (Sup. Ct. N.Y. Cnty. July 11, 2007)........................................ 12

*Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*,
    470 F. Supp. 2d 345 (S.D.N.Y. 2007)............................................................. 4, 13

*Kimmell v. Schaefer*,
    89 N.Y.2d 257 (N.Y. 1996) ............................................................................. 19

*Kreutter v. McFadden Oil Corp.*,
    71 N.Y.2d 460 (N.Y. 1988) ............................................................................. 5, 6

*Lambert v. CCC Builders Grp. Inc.*,
    No. 22 Civ. 5605, 2023 WL 9022791 (E.D.N.Y. Dec. 29, 2023) ................................... 21

*Launer v. Buena Vista Winery*,
    916 F. Supp. 204 (E.D.N.Y. 1996) ................................................................... 13

*Littlejohn v. City of N.Y.*,
    795 F.3d 297 (2d Cir. 2015)............................................................................... 4

iv

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)................................................................................. 24

*Manning v. Erhardt + Leimer, Inc.*,
    No. 17 Civ. 348, 2020 WL 759656 (W.D.N.Y. Feb. 7, 2020)........................................ 13

*Marine Midland Bank, N.A. v. Miller*,
    664 F.2d 899 (2d Cir. 1981)................................................................................. 4

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)................................................................................. 4

*Pachter v. Bernard Hodes Grp., Inc.*,
    10 N.Y.3d 609 (2008) ...................................................................................... 20

*Patel v. Maybank Kim Eng Sec. USA Inc.*,
    243 N.Y.S.3d 622 (1st Dep't 2025) ...................................................................... 20

*Penguin Group (USA) Inc. v. Am. Buddha*,
    16 N.Y.3d 295 (N.Y. 2011) .............................................................................. 5, 5

*Prof'l Merch. Advance Cap., LLC v. C Care Servs., LLC*,
    No. 13 Civ. 6562, 2015 WL 4392081 (S.D.N.Y. July 15, 2015) ..................................... 20

*Robles v. Copstat Sec., Inc.*,
    No. 08 Civ. 9572, 2009 WL 4403188 (S.D.N.Y. Dec. 2, 2009)...................................... 16

*Schlaifer Nance & Co. v. Estate of Warhol*,
    119 F.3d 91 (2d Cir. 1997)................................................................................. 24

*Sea Tow Servs. Int'l., Inc. v. Pontin*,
    472 F. Supp. 2d 349 (E.D.N.Y. 2007) .................................................................. 15

*Seidel v., 18  East 17th St. Owners, Inc.*,
    79 N.Y. 2d 735 (N.Y. 1992) .............................................................................. 17

*Suez Equity Invs., L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001)................................................................................. 19

*The Cookware Co. (USA), LLC v. Austin*,
    No. 15 Civ. 5796, 2017 WL 5198388 (S.D.N.Y. Oct. 23, 2017) ..................................... 8

*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*,
    571 F.3d 221 (2d Cir. 2009)................................................................................. 6

v

*Wallace Church & Co. v. WyattZier, LLC,*
    No. 20 Civ. 1914, 2020 WL 4369850 (S.D.N.Y. July 30, 2020) ..................................... 14

*Weihai Lianqiao Int'l Coop Grp. Co. v. A Base IX Co. LLC*,
    No. 21 Civ. 10753, 2023 WL 2989068 (S.D.N.Y. Apr. 18, 2023).................................. 16

*Whitaker v. Am. Telecasting, Inc.*,
    261 F.3d 196 (2d Cir. 2001)............................................................................................ 4

*Williams v. Preeminent Protective Servs., Inc.*,
    81 F. Supp. 3d 265 (E.D.N.Y. 2015) .............................................................................. 13

## FEDERAL STATUTES

28 U.S.C. § 1391.................................................................................................... 15, 16

## STATE STATUTES

N.Y. B.C.L. § 630(a)................................................................................................... 22

N.Y. C.P.L.R. § 302 ..................................................................................................... 4

N.Y. C.P.L.R. § 302(a)(1)......................................................................................... 5, 6

N.Y. C.P.L.R. § 302(a)(3).............................................................................. 5, 6, 14, 15

N.Y. C.P.L.R. § 503 ................................................................................................... 15

N.Y. C.P.L.R. § 509 ................................................................................................... 15

N.Y. C.P.L.R. § 609(c) ............................................................................................... 22

N.Y. C.P.L.R. § 630 ................................................................................................... 22

N.Y. Labor Law § 190 ........................................................................................... 20, 21

N.Y. Labor Law § 193 ................................................................................................ 20

N.Y. Labor Law § 651(5) ............................................................................................ 20

N.Y. L.L.C.L. § 609(c) ............................................................................................... 22

## FEDERAL RULES

Fed. R. Civ. P. 8......................................................................................................... 4

**INTRODUCTION**

The Court should deny the Motion to Dismiss, ECF No. 17 ("MTD"), filed by Defendants Saiful Khandaker and Rabiul Karim ("Khandaker" and "Karim," or, together, "Individual Defendants"), because the Court has jurisdiction over the Individual Defendants and the claims against them, for which they are personally liable. As alleged in Plaintiffs' First Amended Complaint, ECF No. 7 ("FAC"), Plaintiffs are just two of many victims of Defendant Khandaker's scheme to use shell companies to defraud employees, investors, and vendors to further his professional ambitions. As described herein, Khandaker, with the help of Karim, recruited Plaintiffs, New York residents, to work for Defendant SMC Blockchain Labs, LLC ("SMC") in New York. Defendants then failed to pay Plaintiffs compensation owed and induced them to loan the company money with a false promise that repayment was just around the corner. Contrary to the Individual Defendants' assertions, the FAC pleads more than sufficient facts to hail them into this District to be held personally accountable for their actions.

**FACTUAL BACKGROUND**

Defendant Khandaker has created a slew of companies—some legitimate, some not—to further his business ambition in the arena of blockchain security and protocol. FAC ¶ 1. He is the founder, owner, and chairman of SMC, *id.* ¶ 25, and similarly founded, owns, and leads other entities that function as alter egos for SMC, himself, and Karim, many of which are named as defendants in this matter (the "Corporate Defendants").[1] While Khandaker personally directed all of SMC's operations and engaged directly with Plaintiffs and others, Karim essentially allowed Khandaker to use his namesake and personal address as he saw fit to feign observance of

---

[1] SMC Blockchain Labs, LLC; SMC Labs; SMC Labs BD, Ltd.; TOI Labs LLC; TOI Chain; and Revofast Venture LLC. *See* FAC ¶¶ 37-70; *see also* ¶¶ 77-85 (describing related entity Fintech Ecosystem Development Corporation ("FEDC")).

corporate formalities. For example, Karim is a member of the boards of many of the various shell corporations, FAC ¶¶ 33, 199, 202, and was listed as the initial member on SMC's incorporation paperwork, *id.* ¶ 87. SMC's principal and mailing address listed with the Wyoming Secretary of State (where it is incorporated) is Karim's home address, *id.* ¶¶ 18-19. Karim signed documents as SMC's "managing partner" and "director." *See* Ex. A to Declaration of Kirti Naik ("Naik Decl."); Ex. A to Declaration of Michael Giorgio ("Giorgio Decl.").

During the fall of 2022, Khandaker and Karim recruited Plaintiffs Michael Giorgio ("Giorgio") and Kirti Naik ("Naik"), New York residents, to work for SMC.[2]  *Id.* ¶¶ 90-92. Through in-person meetings in New York and follow-up conversations via phone and email, Khandaker made false statements about SMC's capitalization and ability to pay significant salaries and compensation to induce Plaintiffs to leave jobs and forego other opportunities to come work for SMC. *Id.* ¶¶ 90-92, 95-111. SMC failed to pay Plaintiffs the complete compensation they were owed, at times paying them a portion of their compensation and, at other times, nothing at all. *Id.* ¶¶ 112-44. Khandaker made excuses, citing cash-flow issues and (falsely) assuring Plaintiffs that he would soon be coming into money that would allow him to

---

[2] Individual Defendants offer the specious claim that Naik did not work for SMC, but a different company, Fintech Ecosystem Development Corporation ("FEDC"). Both companies were completely owned, dominated and controlled by Khandaker and Karim, FAC ¶¶ 37-42, 77-94. In any event, Naik's initial employment was through FEDC, a publicly-traded Special Purpose Acquisition Company created as a shell corporation to take SMC public. *Id.* ¶ 82. She first entered into an employment agreement with FEDC in December 2022, but  performed work for both FEDC and SMC. *See id.*; ECF No. 82; Naik Decl. ¶ 3. *Then*, in February 2023, she entered into a superseding consulting agreement with SMC, in which she continued providing CMO services to both FEDC and SMC for a pre-determined three-month period. Naik Decl. ¶ 4 and Ex. A. On May 26, 2023, she entered into an employment agreement with SMC, becoming a full employee. Naik Decl. ¶ 5 & Ex. B. The existence of a single email from Naik with an FEDC signature line is aberrational, and further supports Individual Defendants' disregard for the corporate form, as Naik performed work for both entities at Khandaker's direction. Individual Defendants' assertion of facts and arguments plainly contradicted by documents known to and entered into by them in effort to mislead the Court severely undermines their credibility.

reimburse and pay them. *Id.* Fearful that they would never be paid if SMC was not successful, and in reliance on these false promises, Plaintiffs agreed in 2023 to loan SMC money via promissory notes as a short-term bridge until more funding came in. *Id.* ¶¶ 145-76. Based on additional false promises about incoming funding, and in the hope of eventually being repaid, Plaintiffs continued working for SMC until May 7, 2025, when Plaintiffs put Defendants on notice of their resignation for "good cause" pursuant to their employment agreements, and of their liability as shareholders and owners of SMC and its alter egos, the Corporate Defendants. *Id.* ¶¶ 222-25.

On December 22, 2025, Plaintiffs filed suit against Khandaker, Karim, SMC Blockchain, and Revofast in Supreme Court, New York County, New York. *See* FAC ¶ 71; ECF No. 1-1 (copy of State Court summons and complaint). On January 19, 2026, Khandaker and Karim acknowledged service and (alone) sought removal to this Court based on diversity of the parties. *See* FAC ¶ 27; ECF No. 1-2. To date, while all parties have been served,[3] *see* ECF Nos. 6, 19-22, Khandaker and Karim have chosen to appear solely in their personal capacities and have not responded in any manner on behalf of SMC, Revofast, or any of the entities added to the FAC. On March 10, 2026, Khandaker and Karim filed the current motion to dismiss on behalf of themselves only. *See* ECF No. 17 ("MTD").

## ARGUMENT

### I.    The Court Has Personal Jurisdiction Over Khandaker and Karim

To argue that this Court cannot exercise personal jurisdiction over them, the Individual Defendants ignore the detailed allegations of the FAC and distort the truth by suggesting they

---

[3]    SMC and Revofast Ventures were also served with the State court summons and complaint months ago but have failed to appear or otherwise respond in any court.

lacked knowledge of the fact that they intentionally pursued Plaintiffs to be New York employees. *See* MTD at 13-15. Contrary to the Individual Defendants' arguments, under New York's long-arm statute and consistent with due process, this Court can exercise personal jurisdiction over them based on the substantial business they transacted with Plaintiffs in New York, and the tortious conduct they knowingly directed toward Plaintiffs in New York in connection with that business, which is exhaustively detailed in the FAC and Plaintiffs' declarations. In addition, the Court can exercise personal jurisdiction over Khandaker and Karim under an alter-ego liability theory based on the Corporate Defendants' New York conduct.

a.      **Legal Standards for Motion to Dismiss on Personal Jurisdiction Grounds**

Notice pleadings in federal court require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015). The requirement is one of plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To establish personal jurisdiction at the motion to dismiss stage, before discovery, a plaintiff need only make a "*prima facie* showing of jurisdiction." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (emphasis in original) (citations and quotation marks omitted); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). This requirement is satisfied by pleadings that show that jurisdiction (1) is authorized by New York State's long-arm statute (C.P.L.R. § 302), and (2) comports with due process. *See, e.g., Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F.Supp.2d 345, 358–59 (S.D.N.Y. 2007). In reviewing the motion, "all allegations are construed in the light most favorable to the plaintiff

4

and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A. I. Trade Fin. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993). A *prima facie* showing of personal jurisdiction requires the motion to be denied. *Id.* at 84.

N.Y. C.P.L.R. § 302(a)(1) "authorizes [a] court to exercise jurisdiction over nondomiciliaries for tort and contract claims arising from a defendant's transaction of business" in New York State. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (N.Y. 1988). The statute authorizes jurisdiction based on a single transaction with New York so long as that transaction is "purposeful and there is a substantial relationship between the transaction and the claim asserted." *Id.* A defendant need not ever physically enter New York to have "transacted . . . business" within the state. *Id.*

N.Y. C.P.L.R. § 302(a)(3) permits a court to exercise personal jurisdiction over a defendant who has committed tortious conduct where a plaintiff can show "that (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce."[4] *Penguin Group (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (N.Y. 2011). "If these five elements are met, a court must then assess whether a finding of personal jurisdiction satisfies federal due process," and, if it does, personal jurisdiction is permitted. *See id.*

---

[4] The revenue need not be derived from interstate or international commerce with the forum state. *See, e.g.*, *Cacchillo v. Insmed Inc.*, 833 F. Supp. 2d 218, 232 (N.D.N.Y 2011) (allegation that defendant derived revenue from from drug provided to patients "in the United States and Italy" sufficient to satisfy fifth prong of C.P.L.R. 302(a)(3) on motion to dismiss).

Due process is satisfied where there is "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and the protection of its laws.'" *A. I. Trade Fin.*, 989 F.2d at 82 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (finding due process because non-domiciliary "promise[d] to make payment to a New York-based company in New York" by guaranteeing a note).

As described herein, Defendants' contacts with New York are sufficient to satisfy both C.P.L.R. §§ 302(a)(1) and (3), and due process.

**b.       Legal Standard for Personal Jurisdiction Over Alter Egos**

Where an individual non-domiciliary acts through a shell corporation that serves as its "alter ego," the non-domiciliary is also subject to personal jurisdiction in New York based on the shell's contacts with New York. *See Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) ("[I]n general, 'alter egos are treated as one entity' for jurisdictional purposes." (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 142–43 (2d Cir. 1991)). To exercise personal jurisdiction over an alleged alter-ego at the pleadings stage, a plaintiff need only plausibly allege that the corporation was a shell for an individual defendant, *see Miller*, 664 F.2d at 904, which is a "less onerous" standard than the standard that governs whether a plaintiff may "pierce the corporate veil" to ultimately hold an individual defendant liable.[5] *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F.App'x 195, 196

---

[5] The FAC also sufficiently alleges Defendants' individual liability via an alter-ego theory. *See* p. 16 & n.10, *infra*.

6

(2d Cir. 2005). In determining whether a corporation is a "shell" or "alter ego" for purposes of personal jurisdiction, courts look for allegations of, *inter alia*, "whether there was a failure to observe corporate formalities, evidence of undercapitalization, intermingling of personal and corporate funds, shared office space and phone numbers, [and] any overlap in ownership and directors . . . ." *Cardell Fin. Corp. v. Suchodolski Assocs.*, No. 09 Civ. 6148, 2012 WL 12932049, \*20 (S.D.N.Y. July 17, 2012); *accord Cesfin Ventures LLC v. Al Ghaith Holding Co. PJSC*, No. 21 Civ. 1395, 2022 WL 1885906, \*5 (S.D.N.Y. Dec. 10, 2022) (considering, among other factors, "whether the alter egos and the corporation dealt with one another at arm's length; the payment or guarantee of debts of the alter egos by the corporation in question; and whether the corporation in question had property that was used by the alter egos as if it were their own"). "No one factor is determinative, but rather the key inquiry is whether the corporation is being used by the alleged dominating entity to advance its own personal interests, as opposed to furthering corporate ends." *Cardell*, 2012 WL 12932049, at \*15 (citation and internal quotation marks omitted). Such is the case here.

> **c.  Corporate Defendants' Contacts with New York Can Be Imputed to Individual Defendants Because the FAC Pleads They Were Shell Corporations.**

Both Individual Defendants are subject to personal jurisdiction in New York based on SMC's contacts with New York. With respect to Khandaker, the FAC alleges that he dominated all aspects of SMC (*see* FAC ¶¶ 25, 68, 190-221) and failed to follow corporate formalities including by, *inter alia*, intermingling his funds with SMC's funds by paying or offering to pay company debts from his own personal and family funds and likewise transferring and diverting business funds to personal accounts (*id.* ¶¶ 191, 208, 209); excluding Plaintiff Giorgio, as SMC's CEO, from accessing SMC's bank account (*id.* ¶ 207); grossly undercapitalizing SMC (*id.* ¶ 218); and failing to follow formalities when paying Plaintiffs' salaries, including by failing to

7

provide required wage statements and wage notices and initiating salary payments at his discretion and whim instead of according to a schedule (*id.* ¶¶ 212, 214).[6] With respect to Karim, the FAC alleges that he lent his home address for use as SMC principal mailing and incorporation address (*id.* ¶¶ 18-19), that he lent his name to SMC's initial incorporation paperwork, (*id.* ¶ 87), and that he and Khandaker, as members of SMC's Board of Directors, met irregularly and failed to keep minutes of the meetings they held (*id.* ¶ 199). These allegations are sufficient to subject Khandaker and Karim to jurisdiction as alter egos. *See, e.g.*, *The Cookware Co. (USA), LLC v. Austin*, No. 15 Civ. 5796, 2017 WL 5198388, *3 (S.D.N.Y. Oct. 23, 2017) (under more stringent veil-piercing standard, finding allegation that individual defendant used his personal address and phone number for business purposes to support veil piercing theory). The FAC also alleges that SMC, Revofast Venture, FEDC and the other Corporate Defendants were treated as a single integrated enterprise used for Khandaker's own personal gain. *See generally* FAC ¶¶ 31, 37-70, 78, 190-220. For example, SMC, Revofast Venture, and FEDC shared overlapping board members, including Karim. *Id.* ¶ 202. Thus, Khandaker and Karim can be treated as "one entity" along with Corporate Defendants for the purposes of personal jurisdiction as to all claims.

> **d.      Factual Substantiation of Defendants' Contacts with and Injury to New York**

Contrary to Defendants' characterization of the FAC, Defendants' connections to New York were not limited to the initial in-person meetings with Plaintiffs (in which they admit physical presence in New York). *See* MTD at 13-15. Rather, the FAC extensively details how

---

[6] New York does not recognize the "fiduciary shield" doctrine, which purports to shield individuals from personal jurisdiction for contacts made in a corporate capacity. *See Kreutter*, 71 N.Y.2d at 467–72.

Individual Defendants purposefully created substantial, ongoing employment relationships with Plaintiffs to work in New York that are central to the harms felt by Plaintiffs within the state.

The FAC pleads that in the fall of 2022, Khandaker and Karim, in their roles as owners (and, in Khandaker's case, the founder, owner, and chairman) of SMC, *see* FAC ¶¶ 25-26, 33, traveled to New York to recruit Plaintiffs. *Id.* ¶¶ 91-92. Both Khandaker and Karim met with Plaintiff Giorgio in lower Manhattan, and Khandaker met with Naik on the Upper West Side. *Id.*; *see* ECF No. 18 ("Khandaker Aff.") ¶ 11 (admitting to New York meetings with Plaintiffs). Throughout the negotiations, all parties understood that Plaintiffs would work remotely from their homes in New York; neither Khandaker nor anyone else associated with SMC ever asked Plaintiffs to relocate to Pennsylvania or to report to a Pennsylvania office (or an office anywhere), and with limited exceptions for Giorgio, neither Plaintiff set foot in Pennsylvania. Giorgio Decl. ¶¶ 2, 7; Naik Decl. ¶¶ 1, 10.; *see generally* Khandaker Aff. (failing to assert that Plaintiffs ever worked or were expected to work from Pennsylvania, and failing to disclaim knowledge that Plaintiffs worked remotely from New York). After Plaintiffs agreed to work for SMC, *see generally* FAC ¶¶ 95-111, the parties memorialized Plaintiffs' employment in formal agreements, which Khandaker himself negotiated in his capacity as owner of SMC. *Id.* ¶¶ 112-27; *see* Ex. A to Giorgio Decl.; Ex. B to Naik Decl. The agreements listed Plaintiffs' New York addresses, and each Plaintiff executed their respective agreement in New York. FAC ¶¶ 112-13, 120-21; *see* Ex. A to Giorgio Decl.; Ex. B to Naik Decl.

Khandaker openly acknowledged Plaintiffs' physical presence in New York as an asset to SMC, and sought to bolster SMC's credibility within the industry by increasing its ties and association with New York. As part of this effort, shortly after hiring Giorgio and Naik, Khandaker hired two additional New York employees; had Giorgio buy himself and the two

New York employees laptops (and agreed to reimburse Naik for hers) so they could work remotely from New York; had Giorgio seek out New York office space; and opened a New York EIN for payroll purposes. Giorgio Decl. ¶¶ 3-6; Naik Decl. ¶ 8. Khandaker told Naik he hired her in part because she was located in New York, which would make it easier for her to meet with potential investor-relations and media and brand partners located in New York, and he introduced her to potential partners as his "CMO based out of New York City." Naik Decl. ¶¶ 2, 7. Around the time Naik executed her employment agreement with SMC, Khandaker introduced her to Giorgio over email and suggested the two meet in person in "Manhattan," because he knew they both lived in New York. *See* Ex. C to Naik Decl. and Naik Decl. ¶ 9.

Khandaker personally supervised all of Plaintiffs' work, including checking in with them multiple times per day or week via phone, email, video call, and messenger, all while they were in New York. *Id.* ¶¶ 192, 197; *see* Giogrio Decl. ¶ 7; Naik Decl. ¶ 10. SMC then breached the employment agreements (and New York law) by failing to pay Plaintiffs the full compensation they were owed, a harm felt by Plaintiffs in New York. *Id.* ¶¶ 128-30, 135-39. When payments were made, they were made sporadically at Khandaker's discretion, from another of his companies, Revofast Venture, LLC. *Id.* ¶¶ 128-44, 214.

To continue to reap the benefits of Plaintiffs' unpaid work, Defendant Khandaker repeatedly falsely promised, via phone/video calls and written correspondence to Plaintiffs while they were located in New York, Giorgio Decl. ¶ 8; Naik Decl. ¶ 11, that he was about to come into money that he would use to capitalize SMC to repay the money it owed them. *Id.* ¶¶ 140, 142, 146-57. Then, in 2023, Defendant Khandaker told Plaintiffs (who were in New York) that SMC needed relatively small infusions of cash to tide it over until it would receive much larger infusions of cash (in the billions), and asked them to make personal loans of $90,000 and

$200,000 to SMC to bridge this gap, which they did. *Id.* ¶¶ 145-76; *see* Giorgio Decl. ¶ 8; Naik Decl. ¶ 11. Each note listed each Plaintiff's New York address, contained a New York choice-of-law provision and a New York forum-selection clause, and both Plaintiffs executed their notes in New York. *Id.* ¶¶ 173-76; *see also* Ex. B to Giorgio Decl.; Ex. D to Naik Decl.

SMC defaulted on both promissory notes, and has never paid a penny back to either Plaintiff (who each still lived and continued to work for SMC in New York). FAC ¶¶ 177-78, 181; Giorgio Decl. ¶ 7; Naik Decl. ¶ 11. Defendant Khandaker continued to direct additional false statements regarding current infusions of cash, and future investments, to Plaintiffs, located in New York, to induce them to continue performing work for SMC. *Id.* ¶ 186; *see* Giorgio Decl. ¶ 8; Naik Decl. ¶ 11. Fearful that if they stopped working and supporting the company, they would have no chance of ever receiving the monies SMC owed to them for their time and effort, both Plaintiffs continued performing work for SMC from their New York home offices until May 7, 2025, the day on which they gave notice to Defendants of their good reason resignations. *Id.* ¶¶ 10, 14, 187-88, 222-25; *see also* Giorgio Decl. ¶ 7; Naik Decl. ¶ 10-11.

  e.  **The FAC Allegations Sufficiently Plead Jurisdiction Over Defendants**

The allegations pleaded in the FAC are more than sufficient to establish personal jurisdiction over the Individual Defendants based on their purposeful creation of ongoing, substantial relationships with Plaintiffs in New York, and Khandaker's ongoing involvement in those relationships (including engaging in tortious conduct) in his capacity as owner and chair of SMC.[7]

---

[7] The FAC's adequacy as to Plaintiffs' individual liability, separate from the question of personal jurisdiction, is addressed at in Section III, *supra*.

11

*First*, with respect to the First Cause of Action (Breach of Promissory Notes), as an initial matter, jurisdiction over SMC (and the Individual Defendants as alter egos) regarding breach of the promissory notes is proper pursuant to the agreement within the promissory notes themselves, which contain New York choice-of-law and venue provisions. *See* Giorgio Decl., Ex. B; Naik Decl., Ex. D. In any event, Khandaker's plain intention for SMC to have a New York presence (Giorgio Decl. ¶¶ 3-6; Naik Decl. ¶¶ 2, 7), his personal involvement in drafting and negotiating the promissory notes with Plaintiffs in New York, *see* FAC ¶¶ 161-65, 177, 182-87, plus the notes' inclusion of Plaintiffs' New York addresses and New York choice-of-law and venue provisions (*id.* ¶¶ 175-76), their execution by Plaintiffs in New York, and Khandaker's direction of ongoing communications to Plaintiffs in New York about the terms of the promissory notes (*id.* ¶¶ 182-87; *see id.* ¶¶ 29, 90-93), subject him and SMC (and, by extension, Karim as an alter ego) to personal jurisdiction in New York. *See Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 71 N.Y.3d 65, 72 (N.Y. 2006) (personal jurisdiction appropriate over defendants, including individual defendant, who knowingly initiated and pursued a negotiation with a New York bank that resulted in a significant bond sale); *Humitech Dev. Corp. v. Comu*, 847 N.Y.S.2d 896, 896 (Sup. Ct. N.Y. Cnty. July 11, 2007) (personal jurisdiction permitted where defendant, through phone calls, solicited New York plaintiff to invest in company, negotiated the terms of a loan through fax and email, plaintiff executed loan documents in New York, plaintiff and defendant continued an ongoing business relationship after loan closed, and loan contained a New York choice-of-law and forum-selection clause).

*Second*, with respect to Second and Fifth Causes of Action (N.Y.L.L. Claims), personal jurisdiction is appropriate over SMC (and Individual Defendants as alter egos) and Khandaker because courts exercise personal jurisdiction over out-of-state employers, including individual

12

owners or supervisors involved in tortious conduct where, like here, the employer knowingly employs the plaintiff to work remotely from New York and then engages in employment-related torts while the plaintiff is in New York. *See, e.g.*, *Manning v. Erhardt + Leimer, Inc.*, No. 17 Civ. 348, 2020 WL 759656, at *8 (W.D.N.Y. Feb. 7, 2020) (exercising personal jurisdiction in age discrimination case where defendant recruited plaintiff "[k]nowing that [he] was unwilling to relocate from his home in New York . . . chose to allow him to work from his home in New York" and, during his three-and-a-half year employment, "frequently sent communications into and out of the state"); *Williams v. Preeminent Protective Servs., Inc.*, 81 F.Supp.3d 265, 271 (E.D.N.Y. 2015) (same, in case involving discrimination claims against both corporate and individual employer, where "[d]efendants hired [the plaintiff] knowing that she would live and work in Brooklyn, and 'continued their communications with plaintiff [there]' for a sustained period of time"); *Int'l Healthcare Exch.*, 470 F.Supp.2d at 362–63 (same, where out-of-state employer communicated with plaintiff via phone and email in her New York home office, including engaging in the conduct that plaintiff alleged was discriminatory); *Launer v. Buena Vista Winery*, 916 F.Supp. 204, 207, 209 (E.D.N.Y. 1996) (same, where corporate defendants denied knowledge that plaintiff salesperson worked from New York but plaintiff showed proof that "defendants contacted him at a 718 [*e.g.*, Brooklyn/Queens] phone and fax number, received and sent weekly and monthly reports to a Long Island City address, and had meetings in New York"); *Curry v. Huntington Copper, LLC*, No. 12 Civ. 1673, 2013 WL 6816424, *2-4 (N.D.N.Y Dec. 24, 2013) (exercising personal jurisdiction over individual defendant/owner who supervised plaintiff who worked from New York and engaged in discriminatory acts against her while she was located in New York).

13

*Third*, personal jurisdiction over Individual Defendants for the Third Cause of Action (Breach of Good Reason Payments) is appropriate for the reasons stated with respect to First, Second and Fifth Causes of Action. Namely, Khandaker intended for SMC to have a New York presence (Giorgio Decl. ¶¶ 3-6, Naik Decl. ¶¶ 2, 7), personally negotiated Plaintiffs' New York employment agreements on behalf of SMC, which included their New York addresses and which they signed in New York; and communicated with and supervised them, while they were located in and working from New York, over a years-long employment relationship, and then breached those agreements, harming Plaintiffs in New York. Courts find personal jurisdiction appropriate in breach of contract claims with similar facts. *See, e.g.*, *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 381 (N.Y. 2007) (personal jurisdiction over both corporate and individual defendant who solicited New York-based attorney and entered into and then breached a retainer agreement appropriate because defendants "purposeful[ly] attempt[ed] to establish an attorney-client relationship [in New York]" and "direct[ly] participat[ed] in that relationship via calls, faxes and e-mails that they projected into this state over many months"); *see also Eaton & Van Winkle LLP v. Midway Oil Holdings Ltd., Index No. 102759/09*, 2010 N.Y. Slip Op 3054 9(U), *12-19  (New York Cnty. Sup. Ct., Mar. 10, 2010) (similar facts).

*Fourth*, with respect to the Fourth Cause of Action (Fraudulent Inducement), the FAC alleges that Khandaker, on behalf of SMC, personally and knowingly made fraudulent statements to Plaintiffs while they were in New York (including during in-person meetings where he was physically present in New York), with the intention of inducing them to rely on these statements and to turn down other jobs and join SMC, knowing that they would suffer harm because of their reliance while in New York. Courts find similar fraudulent statements by out-of-state defendants to New York employees or individuals sufficient to satisfy the requirements of C.P.L.R. §

14

302(a)(3) and due process. *See, e.g.*, *Wallace Church & Co. v. WyattZier, LLC*, No. 20 Civ. 1914, 2020 WL 4369850, at \*3, \*8 (S.D.N.Y. July 30, 2020) (exercising personal jurisdiction over out-of-state individual owners of a company under C.P.L.R. § 302(a)(3) who were alleged to have made fraudulent representations to a New York-based marketing and branding firm they retained on an ongoing basis); *Cacchillo v. Insmed Inc.*, 833 F.Supp.2d 218, 230–232 (N.D.N.Y. 2011) (C.P.L.R. § 302(a)(3) and due process satisfied where, *inter alia*, plaintiff viewed out-of-state defendant's online representations in New York, was convinced to enroll in a clinical trial while in New York, and participated in clinical trial in New York with defendant's knowledge).

## II.    <u>Venue is Appropriate in This District</u>

Contrary to Defendants' assertions, *see* MTD at 11-12, venue is also appropriate in this District because a substantial part of the wrongful conduct alleged in the FAC took place in this District[8]—*e.g.*, Plaintiffs' recruitment, and all of Naik's employment—regardless of whether venue might also be appropriate in another district in New York or in Pennsylvania. 28 U.S.C. § 1391; *see, e.g.*, *D'Anzieri v. Harrison Global LLC*, No. 21 Civ. 8506, 2022 WL 17404254, \*9 (S.D.N.Y. Dec. 2, 2022) (venue proper in the S.D.N.Y. because "the conduct which gave rise to [plaintiff's] claims occurred while she was working within this District"); *Geffner v. Quanta Servs., Inc.*, No. 18 Civ. 3761, 2018 WL 6807388, at \*4 (S.D.N.Y. Dec. 27, 2018) (venue proper in S.D.N.Y. where New Jersey-resident plaintiff worked for Delaware corporation from his Manhattan office because "nearly all" work was performed in the District, plaintiff consequently suffered central injuries in the District, and because plaintiff's supervisors directed correspondence to his Manhattan office); *Sea Tow Servs. Int'l., Inc. v. Pontin*, 472 F.Supp.2d

---

[8] This action was originally filed in Supreme Court, New York County, in which venue was proper because Naik resides in New York County (FAC ¶ 12) and because the parties' promissory notes designate New York County as venue (*id.* ¶ 175). *See* C.P.L.R. §§ 503, 509.

349, 363–66 (E.D.N.Y. 2007) (venue appropriate where New York-based plaintiff entered into agreement with Florida-based defendant, where contract contained New York choice-of-law provision, correspondence was sent to the plaintiff in New York, and the contract provided that purchase order and payment requests would be forwarded to the plaintiff's New York office).

The portion of *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353 (2d Cir. 2005) that Individual Defendants cite does not hold otherwise, but rather, is clear that "that venue may properly lie in *any* judicial district in which significant events or omissions material to the plaintiff's claim have occurred," because "the civil venue statute permits venue in multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts," *id.* at 354-56 (emphasis in original).[9]

### III.    The FAC States a Claim Upon Which Relief Can Be Granted as to All Claims

This Court should deny the Individual Defendants' motion because, separate from and in addition to the question of whether the Court can exercise personal jurisdiction against the Individual Defendants, the well-pleaded allegations of the FAC, if taken as true, establish the Individual Defendants' liability for each cause of action.[10] The Individual Defendants' limited challenges (MTD at 15-23) are addressed herein.

---

[9] Individual Defendants' excerpted portions of *Gulf Ins. Co. v. Glasbrenner* cite 28 U.S.C. § 1391 as applying only to cases "not founded solely on diversity of citizenship." *See* MTD at 11 (citing *Gulf*, 417 F.3d at 355-56). However, the statute was amended in 2011 to apply the same standards for venue to "all civil actions brought in district courts of the United States." *See* 28 U.S.C. § 1391(a) (statutory text and 2011 amendment note).

[10] The FAC pleads fact sufficient not only to exercise personal jurisdiction over Individual Defendants as alter egos of the Corporate Defendants, but also pleads enough to "pierce the corporate veil" and hold them liable for the actions of Corporate Defendants in connection to all causes of action. *See generally* FAC; *id.* ¶¶ 18-19, 25, 37-70, 77-78, 80, 87, 190-221; *see, e.g.*, *Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 47 (N.Y. 2018) (alter-ego liability where owners exercised complete domination of the corporation and such domination was used to commit a fraud or wrong against the plaintiff) (citation omitted); *Weihai Lianqiao Int'l Coop Grp. Co. v. A Base IX Co. LLC*, No. 21 Civ. 10753, 2023 WL 2989068, at *2-4 (S.D.N.Y. Apr.

**a.    The FAC States a Claim for Breach of Contract in Connection with the Promissory Notes**

Individual Defendants argue that the First Cause of Action should be dismissed because they now claim that the promissory notes they drafted and provided to Plaintiffs are usurious. MTD at 16-17. In doing so, Individual Defendants—who induced Plaintiffs to enter into the promissory notes based on what Khandaker told Plaintiffs would be a short holdover to sustain the Company until it received a large pending cash infusion that never arrived and likely never existed, and who then diverted Plaintiffs' loans outside the company rather than satisfying SMC's financial obligations to its employees and others—make a mockery of usury laws, which were enacted "to protect desperately poor people from the consequences of their own desperation," *Seidel v. 18 East 17th St. Owners, Inc.*, 79 N.Y.2d 735, 740 (N.Y. 1992) (citation omitted), and not to empower swindlers such as Khandaker and Karim.

Individual Defendants cannot be released from their obligations through their deceptive practices. Specifically, to prevent ill-intentioned "borrowers" from using the usury laws to "void [a] transaction, keep the principal, and achieve a total windfall, at the expense of an innocent person, through [their] own subterfuge and inequitable deception," the New York Court of Appeals has recognized that, "a borrower may be estopped from interposing a usury defense when, through a special relationship with the lender, the borrower induces reliance on the

---

18, 2023) (alter-ego sufficiently pled where defendant disregarded corporate formalities by having funds deposited and removed for personal purposes and where the domination of the corporate entity was used to commit a wrong against plaintiff); *Robles v. Copstat Sec., Inc.*, No. 08 Civ. 9572, 2009 WL 4403188, at *3 (S.D.N.Y. Dec. 2, 2009) (alter-ego sufficiently pled where defendant used his position as sole shareholder to take all of corporation's assets and where defendant kept corporation severely undercapitalized in order to allow corporation to avoid paying plaintiff). As discussed in Section III.B, *supra*, Khandaker is also personally liable for harm to Plaintiffs under the N.Y.L.L. because under the "economic realities" test he may be treated as an individual employer.

legality of the transaction." *Id*. at 743 (citation and quotation marks omitted); *accord Abramovitz v. Kew Realty Equities, Inc.*, 180 A.D.2d 568, 568 (1st Dep't 1992) ("A borrower, who, because of a fiduciary or other like relationship of trust with the lender, is under a duty to speak and who fails to disclose the illegality of the rate of interest he proposes, is estopped from asserting the defense of usury where the lender rightfully relies upon the borrower in making the loan."). Furthermore, "[c]ourts in this circuit have held that a determination of whether a special relationship exists is highly fact-specific and 'generally not susceptible to resolution at the pleadings stage.'" *Century Pac., Inc. v. Hilton Hotels Corp.*, No. 03 Civ. 8258, 2004 WL 868211, at *8 (S.D.N.Y. Apr. 21, 2004) (citations omitted) (in context of a negligent misrepresentation claim); *see also Ammirato v. Duraclean Int'l., Inc.*, 687 F.Supp.2d 210, 221 (E.D.N.Y. 2010) (denying summary judgment because jury must determine whether a special relationship existed for purposes of estopping defendant from asserting usury defense).

In the parallel context of claims for negligent misrepresentation, courts have found a special relationship to exist, "where defendants sought to induce plaintiffs into a business transaction by making certain statements or providing specific information with the intent that plaintiffs rely on those statements or information." *Century Pac., Inc.*, 2004 WL 868211, at *8. That is the precise situation Plaintiffs plead.

The allegations in the FAC make clear that the promissory notes were not the result of an "arms' length" transaction between disinterested business people, but rather, were the product of Plaintiffs' reliance on misrepresentations at a time when Plaintiffs feared that if they did not provide the Company with funds, they risked never being compensated for their work. *See* FAC ¶ 158 ("Khandaker and SMC induced Plaintiffs to loan their own personal funds to SMC based on assurances that the loans would be quickly repaid and would enable the company to

18

succeed."). To induce Plaintiffs to make these loans, Khandaker made false and misleading statements about funding and assets that would be forthcoming and that would enable him to repay the loans quickly. *Id.* ¶¶ 145-56. When Plaintiffs asked whether they should start looking for other employment given SMC's funding shortage, Khandaker replied "No" and strongly discouraged them from leaving the company or finding other jobs, insisting that Plaintiffs' loans would keep the company on solid footing while he worked to secure additional funding. *Id.* ¶ 159. Khandaker also assured Plaintiffs that the promissory notes were enforceable, and Plaintiffs were aware that Khandaker had used similar notes in other borrowing relationships, including with investor Manhattan West. Giorgio Decl. ¶¶ 9-10, Naik Decl. ¶¶ 12-13.

Against this backdrop—where Khandaker knew that Plaintiffs were loaning SMC money specifically so that it could continue operations and pay them the salaries it owed them for work already performed—Plaintiffs have pleaded enough to allege a special relationship with Khandaker and SMC to Individual Defendants from raising a defense of usury. *See Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (special relationship pleaded where pleadings "implie[d] a relationship between the parties that extended beyond the typical arm's length business transaction" because "defendants initiated contact with plaintiffs, induced them to forebear from performing their own due diligence, and repeatedly vouched for the veracity of the allegedly deceptive information"); *Century Pac., Inc.*, 2004 WL 868211, at *8 (plaintiffs adequately pled a special relationship with defendant hotel company by alleging, "that defendants made numerous false statements" about their commitment to the branded hotels plaintiffs agreed to franchise "with the specific intent of earning plaintiffs' trust and reliance" to induce plaintiffs to enter into franchise agreements, before selling the brand); *see also Kimmell v. Schaefer*, 89 N.Y.2d 257, 265 (N.Y. 1996) (special relationship existed where defendant CFO

sought to induce investors to invest by providing them with misleading projections on return on investment, on which he intended and expected them to rely). In any case, even if the Court were to permit Defendants to raise a defense of criminal usury (the only remedy available to a corporate borrower like SMC), the proper remedy would be to revise the interest rate, not to void the notes. *See, e.g.*, *In re BH Sutton Mezz LLC*, No. 16 Civ. 10455, 2016 WL 8352445, at *38 (S.D.N.Y. Bankruptcy Dec. 1, 2016) (revising rate); *Prof'l Merch. Advance Cap., LLC v. C Care Servs., LLC*, No. 13 Civ. 6562, 2015 WL 4392081, *5 n.4 (S.D.N.Y. July 15, 2015) ("If the Court were to find that the Agreement contravened New York's criminal usury law, the Court would nevertheless not void the Agreement *ab initio*, but would rather revise the interest obligation to require a non-usurious rate."); *Carlone v. Lion & The Bull Films, Inc.*, 861 F.Supp.2d 312, 323 (S.D.N.Y. 2012) (same).[11]

> **b.  Defendant Khandaker "Employed" Plaintiffs to Work in New York for Purposes of the N.Y.L.L.**

Individual Defendants lodge several incorrect arguments concerning Plaintiffs' N.Y.L.L. claims. They first argue that, as executives, Plaintiffs are not subject to the N.Y.L.L., citing to N.Y.L.L. § 651(5), which contains the N.Y.L.L. definition for "employee" for purposes of determining entitlement to the minimum wage and overtime payments. This section does not apply to Plaintiffs' wage withholding and nonpayment claims pursuant to N.Y.L.L. § 193. Rather, Labor Law, N.Y.L.L. § 190—the relevant section of the N.Y.L.L.—defines an "employee" as "any person employed for hire by an employer in any employment." N.Y.L.L. § 190(2). New York courts have unambiguously held that executives may bring N.Y.L.L. § 193 unpaid wage claims. *See Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 616 (2008)

---

[11] Should the Court dismiss Plaintiffs' claims against Individual Defendants based on the defense of usury, Plaintiffs respectfully request permission to amend the FAC to add claims of fraud against all Defendants.

(executives are employees for purposes of N.Y.L.L.§ 193; *Patel v. Maybank Kim Eng Sec. USA Inc.*, 243 N.Y.S.3d 622, 624–25 (2025) (same).

With respect to Defendants' argument that the N.Y.L.L. does not apply because Plaintiffs "worked for companies [based in] Pennsylvania and reported to the Board of Directors and their 'employers' in Pennsylvania," MTD at 17, that argument is legally incorrect. Here, both Plaintiffs worked *only* from New York throughout their tenure at SMC. FAC ¶¶ 10, 14; Giorgio Decl. ¶ 7; Naik Decl. ¶ 10. The N.Y.L.L. applies to employees based on where they actually performed work, not where the employer maintained offices. *See, e.g.*, *Collison v. WANDRD, LLC*, 737 F.Supp.3d 231, 240, 244 (S.D.N.Y. 2024). This case is not a scenario like the one Defendants envision, wherein a worker attempts to gain the protections of New York law by "set[ting] up a laptop" in Manhattan without their employer's knowledge. MTD at 18. It is unclear why the Individual Defendants even raise this argument, since they intentionally sought Plaintiffs because of their connection to New York and sought to use their presence here for business advantage. *See* Giorgio Decl. ¶¶ 3-6; Naik Decl. ¶¶ 2, 7. Plaintiffs worked from their home offices continuously throughout their employment, and rarely—and in Plaintiff Naik's case, never—set foot in Pennsylvania for work. Giorgio Decl. ¶¶ 2, 7; Naik Decl. ¶¶ 1, 10. New York has been clear that employees based in New York are entitled to its protections.[12]

### c. Individual Defendants are Liable for the Good Reason Payment

The FAC more than sufficiently alleges that Individual Defendants are personally liable for breach of contract for failing to pay Plaintiffs' good reason payments. Individual Defendants

---

[12] This premise extends to Khandaker, who may be held liable as an "employer" under the N.Y.L.L. based on the degree of personal control he exerted over Plaintiffs' employment. *See, e.g.*, *Lambert v. CCC Builders Grp. Inc.*, No. 22 Civ. 5605, 2023 WL 9022791, at *2 (E.D.N.Y. Dec. 29, 2023); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F.Supp.3d 19, 36–37 (E.D.N.Y. 2015).

raise no arguments about Plaintiffs' entitlement to the good reason payments under the terms of their employment agreements or otherwise argue that the agreements are not enforceable. *See* MTD at 18-20. Individual Defendants instead attack only one theory of liability, claiming they cannot be held liable solely by operation of New York corporate law for the debts, wages or salaries owed, notwithstanding that they are two of the ten largest shareholders of the company. This position is incorrect.

As an initial matter, Individual Defendants' feigned ignorance as to the contents of the N.Y. B.C.L. § 630 notice provided to them is disingenuous.[13] Plaintiffs provided notice to both Khandaker and Karim (as representatives of the corporate defendants). *See* FAC ¶¶ 27, 34. To the extent that Individual Defendants argue that they would not be individually liable because they claim Naik's employment was with FEDC and not SMC or because Plaintiffs were employed in Pennsylvania (both statements being incorrect), they simply reiterate the failing arguments raised earlier in their brief. As noted, SMC Blockchain was Naik's employer. *Id.* ¶ 16; *see supra* n.2. And the N.Y. B.C.L. and N.Y. L.L.C.L. apply when the unpaid services were "performed in the state." N.Y. B.C.L. § 630(a); N.Y. L.L.C.L. § 609(c). Relatedly, Plaintiffs do not plead (or concede) that they agreed to work for free, as Individual Defendants baldly assert. They performed work in anticipation of payment up until they gave notice in May 2025 (FAC ¶¶ 119, 127; *see also id.* ¶¶182-88.) Accordingly, notice is timely.

Plaintiffs do not dispute that personal liability under N.Y. B.C.L. § 630(a) or N.Y. L.L.C.L. § 609(c) is a theory of liability, and not a separate legal claim. However, Plaintiffs'

---

[13] Individual Defendants do not appear to contest that N.Y. B.C.L. § 630 is the appropriate provision at issue. MTD at 18-20. In any event, as pleaded, the notice requirements under N.Y. B.C.L. § 630(a) and NY Ltd. Liab. Corp. Law ("N.Y. L.L.C.L.") § 609(c) are substantially similar for each corporate form. *Compare* N.Y. B.C.L. § 630 *with* N.Y. L.L.C.L. § 609.

decision to plead facts supporting that theory of liability is not error and does not support dismissal of the Individual Defendants. For one, the FAC pleads multiple theories of personal liability against Individual Defendants that require them to remain in the case.[14] Resolution of questions of Individual Defendants' liability as shareholders during the pendency of the action would be the most efficient way to proceed, rather than requiring Plaintiffs to file yet another action upon obtaining a verdict. Indeed, Defendants SMC and Revofast did not respond to the NY State complaint and therefore have defaulted, and the Corporate Defendants Plaintiffs added in the FAC (SMC Labs, SMC Labs Bd, Ltd., TOI Labs, LLC, and TOI Chain)—alter egos under which SMC still conducts business—have not responded or entered an appearance, either.[15] Accordingly, there is a high likelihood that Plaintiffs will need to seek satisfaction of their judgment directly from Khandaker and Karim. Given that there are multiple bases for Individual Defendants to remain involved in the case, there is no prejudice to allowing issues of individual shareholder liability to be resolved in this action, in lieu of a separate action later.

    **d.**       **Plaintiffs Allege Fraudulent Inducement with Sufficient Specificity**

The Court should reject Individual Defendants' argument that Plaintiffs failed to plead their claim for fraudulent inducement with required specificity. This argument makes little sense and, tellingly, Individual Defendants do not cite a single case in support of their position.

Individual Defendants incorrectly argue that Plaintiffs did not rely on misrepresentations by Defendants. Plaintiffs plead the detailed and specific misrepresentations Khandaker made about SMC, as well as their reliance on documents Khandaker showed Plaintiffs concerning

---

[14] *See supra* n.10 (alter-ego liability), n.11 (individual employer liability under N.Y.L.L.).

[15] Given that Khandaker and Karim are the owners of the Corporate Defendants, the failure of any Corporate Defendant to appear is curious, and suggests gamesmanship on the part of Individual Defendants.

associated companies and potential funding, in addition to his representations regarding the same. *See* FAC ¶¶ 95-111. Plaintiffs bring this action because it was only after they were hired and had been employed for some time that they came to understand that Defendants' representations about the company and its funding were entirely false. *See, e.g.*, ¶¶ 159-60, 182-84, 188.

That Defendants duped allegedly sophisticated business professionals speaks not to implausibility, but to the sophistication of and intent behind Defendants' scheme. (Notably, the Individual Defendants do not contest the fraudulent nature of the representations, but argue only that Plaintiffs should have caught onto their nature earlier.) In any event, Plaintiffs' sophistication and understanding and its reasonableness at the time they relied on Defendants' false representations is a "nettlesome" and "fact intensive" question, reserved for the jury. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). Thus, courts will "not lightly dispose of [claims based on reasonable reliance] at the motion to dismiss stage." *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 186 n.19 (2d Cir. 2015). Courts routinely find it not to be unreasonable for sophisticated actors to have relied on material misrepresentations. *See, e.g.*, *Caiola v. Citibank, N.A., New York*, 295 F.3d 312, 330–31 (2d Cir. 2002) (sophisticated investor's reliance on oral material misstatements by Citibank employees about the company's investment strategy was reasonable).

## IV.     The Case Should Not Be Stayed While This Motion Is Pending

Discovery should be allowed to proceed during the pendency of Individual Defendants' Motion to Dismiss. Putting aside that the motion is meritless, Individual Defendants' motion does not include the remaining six corporate Defendants, against whom discovery should proceed. Even if Individual Defendants succeed on their motion, (a) it would not change the

24

substance of discovery, only the location of the action, and (b) discovery will nevertheless necessarily involve both Individual Defendants regardless of whether they are named Defendants because they are owners of the corporate Defendants and are key actors in the events at issue. *See generally*, FAC. Absent complete resolution or dismissal of the case, there is no context in which Khandaker and Karim will not be deeply involved in this case.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Motion to Dismiss. Alternatively, Plaintiffs respectfully request an opportunity to amend their complaint to address any pleading deficiencies, should the Court determine that such deficiencies exist.

Dated: April 13, 2026
      New York, New York

Respectfully submitted,

Gregory S. Chiarello
**OUTTEN & GOLDEN LLP**
685 Third Ave., 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
gchiarello@outtengolden.com

*Attorneys for Plaintiffs*

26

## WORD COUNT VERIFICATION

Pursuant to S.D.N.Y. Local Civil Rule 7.1(c), I, Gregory S. Chiarello, certify that, according to the word count of the word-processing program used to prepare the foregoing memorandum of law, there are **8,086** words in those portions of the document covered by Local Civil Rule 7.1(c).